1    James R. Ballard, Esq. (SBN 178122)
     Sarah Brite Evans, Esq. (SBN 210980)
2    SCHWARTZ SEMERDJIAN HAILE BALLARD & CAULEY LLP
     101 West Broadway, Suite 810
3    San Diego, CA 92101
     Telephone: (619) 236-8821
4    Facsimile: (619) 236-8827

5    Attorneys for Defendant
     M.L. STERN & CO., LLC

6

7

8                   **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 | )   MASTER FILE: 07-0118 BTM (JMA) |
| 11 | ) |
| | )   **DEFENDANT M.L. STERN & CO., LLC'S** |
| | IN RE M.L. STERN         )   **OPPOSITION TO PLAINTIFFS'** |
| 12 | OVERTIME LITIGATION    )   **MOTION TO LIMIT EX PARTE** |
| | )   **COMMUNICATIONS BETWEEN** |
| 13 | )   **DEFENDANT AND MEMBERS OF THE** |
| | )   **PROPOSED CLASS, TO NULLIFY** |
| 14 | )   **EXECUTED SETTLEMENT AND** |
| | )   **RELEASE AGREEMENTS AND TO** |
| 15 | )   **IMPOSE SANCTIONS AND** |
| | )   **ATTORNEYS' FEES AND FOR OTHER** |
| 16 | _____ )   **RELIEF** |

17

18

19

20

21

22

23

24

25

26

27

28

                                                      07-cv-0118

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD:  Pre-Certification Communications with Putative Class Members is
      Constitutionally-Protected Speech Entitled to Court Protection . . . . . . . . . . . . . . . . . . . . . 2

ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1.      The ML Stern Letter is not Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.      The ML Stern Letter is not Misleading or Coercive . . . . . . . . . . . . . . . . . . . . . . . 5

      a.      The Letters and Its Enclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      b.      Section 1: "Update on the Litigation" . . . . . . . . . . . . . . . . . . . . . . . . . 5

      c.      Section 2: "Potential Class Action" . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      d.      Section 3: "Monetary Compensation" . . . . . . . . . . . . . . . . . . . . . . . . . 6

      e.      Section 4: "Further Consideration" . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      f.      Section 5: "Further Action" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3.      The Facts Support the Conclusion that the ML Stern Letter is Proper . . . . . . . . . . 9

4.      Cases Directly on Point Support ML Stern's Position . . . . . . . . . . . . . . . . . . . . . . 10

      a.      *The Kay Co., LLC v. Equitable Production Co.* . . . . . . . . . . . . . . . . 11

      b.      *Keystone Tobacco Co., Inc. v. United States Tobacco Co.* . . . . . . . . . 12

5.      The Cases Cited by Plaintiffs Are Not Availing . . . . . . . . . . . . . . . . . . . . . . . . . 13

      a.      *Kleiner v. First National Bank of Atlanta* . . . . . . . . . . . . . . . . . . . . . 14

      b.      *Wang v. Chinese Daily News, Inc.* . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      c.      *Belt v. Emcare, Inc.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6.      ML Stern Has Not Violated Any Professional Rule of Conduct . . . . . . . . . . . . . . . 16

7.      Plaintiffs' Requested Remedies Are Overreaching . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

**State Cases**

Atari, Inc. v. Superior Court of Santa Clara County,
(1985) 166 Cal.App.3d 867, 871 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Parris v. The Superior Court of Los Angeles County,
(2003) 109 Cal.App.4th 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8


**Federal Cases**

Babbitt v. Albertson's Inc.,
(N.D. Cal. 1993) 1993 WL 150300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Belt v. Emcare, Inc.,
(E.D. Tex. 2003) 299 F.Supp.2d 664, 667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

Burrell v. Crown Central Petroleum, Inc.,
(E.D. Tex. 1997) 176 F.R.D. 239, 244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Fink v. Gomez,
(9th Cir. 2001) 239 F.3d 989, 992 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gulf Oil Co. v. Bernard,
(1981) 452 U.S. 89, 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 8, 11, 17

In Re Exxon Valdez,
(9th Cir. 2000) 229 F.3d 790, 795 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In Re McKesson HBOC, Inc. Securities Litigation,
(N.D. Cal. 2000) 126 F.Supp.2d 1239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.,
(D.D.C. 2002) 238 F.Supp.2d 151, 154 . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 8, 12, 13, 17

The Kay Co., LLC v. Equitable Production Co.,
(S.D.W.Va. September 21, 2007) -- F.R.D. --, 2007 WL 2758574 . . . . . . . . . . . . . . . 11, 17

Kleiner v. First National Bank of Atlanta,
(11th Cir. 1985) 751 F.2d 1193 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

Maddock v. KB Homes, Inc.,
(C.D. Cal. July 9, 2007) 2007 WL 2221030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Parks v. Eastwood Insurance Services, Inc.,
(C.D.Cal. 2002) 235 F.Supp.2d 1082, 1083-1084 . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Wang v. Chinese Daily News, Inc.,
(C.D. Cal. 2006) 236 F.R.D. 485 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Zambrano v. City of Tustin,
(9th Cir. 1989) 885 F.2d 1473, 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1    Defendant M.L. Stern & Co., LLC ("ML Stern") respectfully submits the following opposition

2    to Plaintiffs' motion to limit ex parte communications between ML Stern and members of the proposed

3    class, to nullify executed settlement agreements and to impose sanctions.

4                                      **Introduction**

5    Plaintiffs seek to limit ML Stern's ability to communicate with its own employees regarding the

6    proposed class action litigation and to nullify settlements reached with putative class members.  While

7    it is clear that Plaintiffs disagree with ML Stern's strategy and that such settlements will impact the size

8    of the potential class, any analysis must start by recognizing that there is no legal precedent supporting

9    the notion that a defendant is precluded from offering settlement to or from communicating with a

10   putative class pre-certification.  In fact, the law on the subject is just the opposite: in the absence of a

11   court order to the contrary, class action defendants *can* make settlement offers to putative class members

12   pre-class certification and class action defendants *can* communicate with putative class members pre-

13   certification.  Such communications, like pre-filing communications, are generally permitted and are a

14   Constitutionally-protected form of free speech entitled to Court protection.[1]  Absent direct evidence of

15   coercion, false or misleading statements or a violation of a court order, such communication should not

16   be restricted.

17   Plaintiffs accuse ML Stern of various nefarious acts including "secret" actions, "egregious"

18   behavior and "bad faith."  Plaintiffs' misplaced rhetoric is based upon a flawed analysis of cases wherein

19   defendants communicated with putative class members *following* class certification, *following* the

20   direction to provide class notice and *in violation* of a court order or directive.  No such conduct occurred

21   here and, thus, the legal principals relied upon by Plaintiffs are not analogous to this setting.  In fact,

22   contrary to the main theme of Plaintiffs' argument–that ML Stern acted secretly and without the approval

23   of the Court or opposing counsel–*no prior approval or notice is required* to be provided to the Court

24   or to opposing counsel when communicating with putative class members during the pre-certification

25   stage.

26   _____

27       [1]Plaintiffs certainly understand that they can currently communicate with the putative class members, as Plaintiffs'
     counsel sent a mass mailing to ML Stern's employees soliciting class plaintiffs for a new complaint *while this motion was*

28   *pending.*  See Declaration of David Maurer and Exhibit 1 attached thereto.

ML STERN'S OPPOSITION TO MOTION TO LIMIT EX PARTE COMMUNICATIONS
1

1    Beyond that, ML Stern acted anything but secretive.  While it admittedly did not seek court
2  approval or provide notice to opposing counsel of the settlement offer (and was not required to do so),
3  ML Stern provided the putative class members with contact information for all attorneys and advised
4  the putative members to seek independent counsel or to seek out Plaintiffs' counsel for further
5  information.  Moreover, ML Stern made such offers of settlement to its own employees after the
6  employees had overwhelmingly indicated their near-unanimous disinterest in participating in this
7  lawsuit.  This fact was openly disclosed to the Court and to opposing counsel months ago.  Those are
8  not the actions of a company trying to keep a settlement offer secretive.

9    Looking past the rhetoric, this issue boils down to one clear and concise question: did the ML
10  Stern letter contain misleading or coercive statements such that it should be restrained despite its
11  Constitutional protection?  It is undisputed that the letter is not improper; i.e., in violation of a Court
12  order.  It is also undisputed that pre-certification communications with the putative class, including
13  offers of settlement, are generally permitted, according to governing legal precedent.  In order to limit
14  the speech at issue, this Court must find clear and direct evidence of misleading statements and/or
15  coercion.  It is not enough that broad-based assertions have been levied by the Plaintiffs; in order for this
16  Court to grant Plaintiffs' requested relief, there must be a clear record and specific findings to pass
17  Constitutional muster.

18    Against this backdrop, ML Stern demonstrates below that its settlement letter is not misleading,
19  is not coercive and is in accord with legal precedent finding that similar offers of settlement based upon
20  similar facts and is therefore protected free speech.

21                              **Legal Standard:**
22        **Pre-Certification Communication with Putative Class Members is**
23        **Constitutionally-Protected Speech Entitled to Court Protection.**

24    Pre-certification communications to putative class members by both parties are generally
25  permitted and also considered to constitute Constitutionally-protected speech.  *Gulf Oil Co. v. Bernard*
26  (1981) 452 U.S. 89, 101; *Parks v. Eastwood Insurance Services, Inc.* (C.D.Cal. 2002) 235 F.Supp.2d
27  1082, 1083-1084; *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867, 871.  As such, any
28  limitations on pre-certification communications between parties and potential class members must be

1    "based on the clear record and specific findings that reflect a weighing of the need for a limitation and

2    the potential interference with the rights of the parties" or the limitation runs the risk of being an

3    unconstitutional prior restraint on speech. *Gulf Oil Co., supra*, 452 U.S. at 101.  Any restrictive order

4    should make specific findings of actual or potential abuse or misconduct, and sanctions or limitations

5    on future communications should be narrowly tailored to avoid excessive restraint on speech. *Id.*  As

6    a rule, pre-certification communications with putative class members should only be limited upon a

7    showing that the communication is misleading, coercive or improper. *Parks, supra*, 235 F.Supp.2d at

8    1084; *Belt v. Emcare, Inc.* (E.D. Tex. 2003) 299 F.Supp.2d 664, 667.

9            The leading authority on this topic is *Gulf Oil Co., supra*, wherein the Supreme Court addressed

10   the Rule 23 power of a District Court to "limit communications from named plaintiffs and their counsel

11   to prospective class members prior to class certification." *Id.* at 91.  The Supreme Court recognized that

12   class actions present opportunities for abuse and therefore a District Court has both the duty and the

13   authority to exercise control over a class action and to enter appropriate orders governing the conduct

14   of counsel and parties. *Id.* at 100.  In determining this authority, the Supreme Court rejected a total ban

15   on communication between the plaintiff and putative class members and held that an order that limits

16   a party's ability to communicate with putative class members "should be based on a clear record and

17   specific findings that reflect a weighing of the need for a limitation and the potential interference with

18   the rights of the parties." *Id.* at 101.  The order should be based on "a specific record showing by the

19   moving party of the particular abuses by which it is threatened." *Id.* at 102.  The result should be "a

20   carefully drawn order that limits speech as little as possible, consistent with the rights of the parties

21   under the circumstances," and the Court must give "explicit consideration to the narrowest possible relief

22   which would protect the respective parties." *Id.*  In *Gulf Oil*, the Supreme Court ultimately rejected the

23   limitation the District Court had placed on the plaintiff's communication with the putative class

24   members because the Court was unable to identify anything in the communication that was improper.

25   *Id.* at 103.  Courts have applied this standard to communication between the defendant and putative class

26   members. *See, e.g.*, *Keystone Tobacco Co. v. U.S. Tobacco Co.* (D.D.C. 2002) 238 F.Supp.2d 151, 154.

27           There is no requirement that pre-certification communications with putative class members be

28   approved by the Court or by opposing counsel.  In fact, the Supreme Court held that parties or their

1  counsel *should not* be required to obtain prior approval before communicating with the putative class
2  in a pre-certification class action except as needed to prevent serious misconduct. *Gulf Oil Co., supra,*
3  452 U.S. at 94-95; *see also Parris v. Superior Court* (2003) 109 Cal.App.4th 285 (as pre-certification
4  communication is protected by the First Amendment and the California Constitution, it requires no prior
5  court approval).

6  Moreover, it is not enough that a *potentially* coercive situation exists. The Court must have a
7  clear record and specific findings that reflect a weighing of the need for limitation and the potential
8  interference with the rights of the parties. *Burrell v. Crown Cent. Petroleum, Inc.* (E.D. Tex. 1997) 176
9  F.R.D. 239, 244, *citing Gulf Oil, supra,* 452 U.S. at 101. It is also not enough that the communication
10  is partisan. Indeed, pre-certification communications with members of the putative class can utilize
11  advocacy language. *Babbitt v. Albertson's, Inc.* (N.D. Cal. 1993) 1993 WL 150300.

12  Finally, simply because a party objects to the communication or calls it abusive does not allow
13  a Court to limit such communications. "Neither the Constitution nor the judge's duty of Constitutional
14  fact-finding is subsumed by the application of the pejorative word 'abuse.' Not everything that tends
15  to make a class action less convenient than ideal or more difficult to manage is an abuse." *Parris,*
16  *supra,* 109 Cal.App.4th at 299 (citation omitted). When an opposing party seeks an injunction,
17  protective order or other relief as a result of alleged improper pre-certification communications, the court
18  may impose restrictions only by a showing of direct, immediate and irreparable harm. *Id.* at 299-300.
19  "Broad-based assertions that a proposed informational notice is 'unfair,' contains some inaccurate
20  statements, or is presented in a misleading form are simply insufficient bases for imposition of judicial
21  limitations on protected speech in the form of a prior restraint." *Id.* at 300.

22  **Analysis**

23  Against this legal backdrop, it is clear that the ML Stern letter is Constitutionally-protected
24  speech entitled to Court protection. It is just as clear that Plaintiffs' requested relief cannot be granted.

25  **1.    The ML Stern Letter is not Improper.**

26  Despite Plaintiffs' rhetoric to the contrary, the ML Stern letter is neither improper, misleading
27  or coercive. In terms of its propriety, it cannot be argued that the letter was sent in violation of any Court
28  order or directive. The proposed class has not been certified, the Court has not considered or crafted any

---

1  type of notice to the class members and the Court has not limited communication with the putative class

2  members in any way, shape or form.  From a pure legal standpoint, the ML Stern letter is not improper.

3  **2.      The ML Stern Letter is not Misleading or Coercive.**

4  Turning to the letter itself, there is nothing misleading or coercive in the contents.  To the

5  contrary, the ML Stern letter presents the allegations against it in a straightforward manner and with an

6  eye towards impartiality.  The ML Stern letter discusses both the benefits and the risks of settling the

7  claims and encourages the putative members to seek independent counsel.  In sum, the ML Stern letter

8  follows the precise facts and guidelines stated in *Keystone Tobacco, supra,* 238 F.Supp.2d 151, analyzed

9  in detail below.  Looking at the specifics of the letter:

10  **a.      The Letters and Its Enclosures**

11  The ML Stern letter was accompanied by a draft settlement agreement and a copy of the

12  Plaintiffs' consolidated complaint.  Thus, the putative class members had documents showing the exact

13  claims they were being asked to release and the precise allegations being asserted by the Plaintiffs

14  against ML Stern.  The putative class members had all relevant information necessary to make an

15  informed decision as to settlement and were encouraged to share the same with their own counsel prior

16  to making any decision.

17  **b.      Section 1: "Update on the Litigation."**

18  Section 1 provides a full and fair assessment of the claims being asserted by the Plaintiffs;

19  specifically, "[t]he lawsuit . . . seeks unpaid minimum wages, overtime pay, and compensation for

20  missed meal and rest periods that hourly, non-exempt workers are entitled to receive.  It also challenges

21  ML Stern's practices for expense sharing."  ML Stern also notes that if the Plaintiffs' claims are correct,

22  the Account Executives "*should have been*" treated as hourly employees "required to use a time clock

23  or a time card to keep track of hours worked, subject to mandatory rest and meal breaks, and unable to

24  work overtime absent prior supervisor approval."  (Emphasis added.)  There is nothing misleading or

25  incorrect about such statement.  Plaintiffs' lawsuit argues that the Account Executives were improperly

26  classified as "exempt" and, rather, should have been "non-exempt," entitled to overtime and meal and

27  rest breaks.  This would have required timekeeping consistent with the practices and treatment of normal

28  hourly employees.  Finally, Mr. Stern's opinion and belief as expressed in the last few sentences of

1    Section 1 is neither misleading nor coercive.   He simply states on behalf of management that "we

2    believe in more freedom...." This is not a statement of fact but a statement of opinion. It is his opinion

3    and his management philosophy. By definition, such statement cannot be misleading as it is his opinion

4    and the letter clearly identifies it as such.

5         Even assuming the statements in this section are advocacy (which is acceptable per *Babbitt,*

6    *supra),* the putative class members were provided with the complaint itself. Thus, they (and their

7    attorneys) could read for themselves the very allegations being made by the Plaintiffs and make an

8    independent determination as to the claims being asserted. This is not misleading or coercive.

9                   **c.     Section 2: "Potential Class Action."**

10        Section 2 points out that the Court must certify a class before the putative members may join the

11   class. That is an absolutely correct statement. This section also points out that the putative class

12   members may be entitled to money should the class prove successful including "wages for the overtime

13   you should have received, penalties for missed meal periods, and reimbursement for any improperly

14   deducted expenses." Given the lack of precedent in these cases, the ML Stern letter correctly states that

15   the potential amount cannot be quantified. Again, true statements. Finally, the letter states that the

16   Plaintiffs' current settlement demand would severely impact ML Stern's net capital requirements and

17   would make staying in business difficult. Neither statement is misleading and is attested to by Milford

18   L. Stern in his accompanying declaration.

19                  **d.     Section 3: "Monetary Compensation."**

20        As a lead-up to the offer of settlement, Section 3 details other lawsuits against brokerage houses

21   and the formula used for settlements. There is nothing incorrect in the recitation of the facts. Plaintiffs

22   take issue that the Morgan Stanley settlement is not the most "recent" settlement but they quibble not

23   with the explanation in the ML Stern letter of the formula used in that settlement or that the settling class

24   members received $219 multiplied by the total number of months worked by each class member during

25   the claim period. The purpose of the Morgan Stanley reference (which Plaintiffs completely ignore) was

26   to provide complete and accurate information to the putative class members and indicate that other

27   settlements have paid class members *more* than the offer made by ML Stern.  In fact, the letter

28

1  specifically indicates that the settling class in Morgan Stanley received four times more than that offered

2  by ML Stern. This is not deception; this is full disclosure of relevant facts.

3         That Mr. Stern offers his opinion that any multiplier to be employed against ML Stern should

4  be lower is not a statement of fact. Mr. Stern prefaces such statements by stating "we believe"–"we

5  believe that any multiplier ... will be significantly lower" and "we believe our defense is much

6  stronger...." His opinion and/or beliefs are not statements of fact and cannot be characterized as

7  misleading. It is simply his opinion.

8         Section 3 concludes by referencing the attached, proposed settlement agreement. The letter

9  correctly and specifically notes that a settling putative class member will be "expressly waiving [his/her]

10  right to participate in the potential class action and expressly waiving [his/her] claims, real or potential,

11  for past due overtime wages, missed meal periods and expense payments. In sum, [he/she] will be

12  giving up [his/her] potential rights asserted in the lawsuit." There is no attempt to hide the claims being

13  waived or keep the putative member "in the dark" as to the claims being waived. And, again, the

14  settlement agreement was an attachment to the letter so each putative class member could see exactly

15  what he/she was giving up and have his/her own counsel review the agreement. Finally, the letter states

16  "[t]here is no denying that you could potentially recover more should you participate in the class." This

17  is yet another fair and accurate representation that any employee who accepted the settlement offer may

18  be giving up the chance to receive more money from the company.

19             e.    **Section 4: "Further Consideration."**

20         Section 4 directs the putative class members to independent counsel of his/her own choosing to

21  analyze the offer. The letter also provides the putative members with name and address of the attorneys

22  involved in this matter. This, too, was done in the interests of full disclosure. Contrary to Plaintiffs'

23  assertion that the ML Stern letter was sent under the shroud of secrecy, Mr. Stern took great pains to

24  provide all relevant information to the putative class members, including contact information for the

25  attorneys prosecuting the claim against his company. If Mr. Stern had truly wanted to proceed in a

26  secretive fashion, he would have omitted any reference to the Plaintiffs' counsel, failed to include the

27  complaint and required that the employees only speak to ML Stern or its corporate counsel regarding the

28  settlement offer. The ML Stern letter took the opposite approach. The ML Stern letter is an "open

1   book" containing all of the necessary information and contact information for the putative class members

2   to make an informed decision as to whether or not to settle the potential claims.[2]  It is the exact opposite

3   of secretive attempts or bad faith.

4            **f.      Section 5: "Further Action."**

5            Section 5 states very clearly that the decision about the settlement offer will have no impact on

6   the employee's continuing relationship with ML Stern by expressly noting:

7            Absolutely no adverse actions will be taken against you no matter what
             you decide to do.  We respect the fact that some of you may choose to
8            take part in the class action and will not harbor any ill will accordingly.

9   Plaintiffs argue that these statements are coercive.  However, the very wording is anything but coercive.

10  Mr. Stern tells the putative members to act as they wish and no retaliation will be taken as a result.  How

11  is that possibly coercive?  The ML Stern letter is devoid of any coercive statements or any explicit or

12  implicit threats.  Plaintiffs argue that the mere fact that the letter was sent from an employer to an

13  employee evidences coercion to justify a prior restraint.  Such conclusory statements will not support

14  an argument of coercion so as to limit Constitutionally protected speech.  *Burrell, supra,* 176 F.R.D. at

15  244 (court must have a clear record and specific findings to limit pre-certification communications);

16  *Parris, supra,* 109 Cal.App.4th at 300 (broad-based assertions will not support imposition of judicial

17  limitations on protected speech); *Keystone Tobacco, supra,* 238 F.Supp.2d at 158-159 (while an ongoing

18  business relationship increases the possibility that communications between defendant and putative class

19  members are coercive, the existence of such a relationship is not enough by itself to justify precluding

20  the communication of settlement offers to putative class members).

21           The ML Stern letter concludes by asking the putative members to respond by October 19, 2007.

22  Given that the letter was delivered to the Account Executives on September 28, 2007, the Account

23  Executives were provided three weeks to review the materials and make a decision.  ML Stern deemed

24  this to be a reasonable amount of time and would have accepted responses (accepting or rejecting

25  settlement) after that date.  Nowhere does the letter state that the offer will expire on that date or that the

26

27  ─────────────────────

28  [2]As for Plaintiffs' lament that its counsel's name and address appeared without prior approval or notice, there is no
    requirement that pre-certification communications be approved or that opposing counsel be consulted.  *Gulf Oil Co., supra,*
    452 U.S. at 94-95; *Parris, supra,* 109 Cal.App.4th 285.

1  Account Executive will face any action if a response is not received by that date. It is a date, plain and

2  simple, that was an attempt to provide a reasonable amount of time.[3]

3    **3.  The Facts Support the Conclusion that the ML Stern Letter is Proper.**

4    Not only is ML Stern's letter not misleading, coercive or improper, other facts demonstrate that

5  the ML Stern employees are not interested in participating in this class action lawsuit and this Court

6  should not force it upon them. *See, e.g., In re McKesson, supra,* 126 F.Supp.2d at 1243 ("class members

7  should not be forced into a class against their will.") Stated otherwise, this lawsuit does not necessarily

8  reflect the wishes and desires of the ML Stern employees. As set forth in the Declaration of Mr. Stern,

9  filed herewith, these facts are clear.

10    ML Stern is a unique brokerage house. The company is a relatively small, close-knit one,

11  currently comprised of about 134 account executives in seven offices in California and Las Vegas. ML

12  Stern's Account Executives enjoy higher-than-industry-average commissions and, as a result, the

13  company enjoys relatively little turnover. In fact, of the approximately 130 account executives working

14  for ML Stern when these class action complaints were filed, eighty-nine of them were employed for at

15  least four years (which is the claimed length of the putative class period). Thirty of the Account

16  Executives and managers have been working for ML Stern for more than fifteen years, another fifteen

17  have worked for ML Stern for between ten and fourteen years, and another eighteen have worked for ML

18  Stern for between five and nine years.

19    After this class action lawsuit was filed, ML Stern sent a survey to its Account Executives

20  inquiring as to job duties and their desire to participate in the lawsuit. The survey was distributed to all

21

22  ————————————

23    [3]Plaintiffs' citation to *In re McKesson HBOC, Inc. Securities Litigation* (N.D.Cal.2000) 126 F.Supp.2d 1239 for
the proposition that "communications that contain a gratuitous sense of urgency are, at a minimum, inherently misleading"

24  (Plaintiffs' Points & Authorities, Page 11:10-12) is an incorrect statement of the case and has no application here. *McKesson*
did not involve party communications to a putative class but rather a competing attorney's solicitations and advertisements

25  to a putative class. Viewed in the context of an attorney advertisement and determined under the provisions of California
Rule of Professional Conduct 1-400 directed at attorney advertising and solicitations, that Court held that the solicitations

26  were misleading and deceptive because they were labeled "notices" (which has a particular meaning in a class action lawsuit);
they did not identify the court-appointed lead counsel; they made inadequate disclosures as to the costs and benefits of

27  participating in the class action; and they failed to provide any information on the timetable for the class action suit while at
the same time demanding that the claimant meet an arbitrary deadline. *Id.* at 1244-1245. In discussing the aspects of the

28  solicitations it finds "particularly troubling," no mention is made of the arbitrary deadline. *Id.* at 1246. The arbitrary deadline
in *McKesson* was but a factor in the Court's finding that the solicitation was deceptive. The deadline was not, in and of itself,
the only factor nor did its inclusion make the solicitation "inherently misleading" as argued by the Plaintiffs herein.

1   Account Executives, was not mandatory and could be returned anonymously.  As is detailed in Mr.

2   Stern's accompanying declaration, *eighty-two out of the eighty-three* Account Executives who returned

3   the surveys and are potentially eligible to participate in this class action indicated that they were not

4   interested in pursuing potential recovery from this class action lawsuit against ML Stern.

5        With that knowledge in hand, ML Stern sent its settlement letter to the same group of Account

6   Executives.[4] The initial response (also described in Mr. Stern's declaration) was overwhelming and very

7   telling.  Specifically, of the ninety-four Account Executives who received the ML Stern letter, *fifty-two*

8   responded within four days, accepting the offer of settlement.  Furthermore, at least ten more expressed

9   a desire to settle but such discussions were tabled as a result of the Court-ordered stay issued October

10  12, 2007.  Consistent with the Court's Order, no discussions regarding the settlement agreements or the

11  ML Stern letter have occurred with the putative class members since that time.  Prior to October 12,

12  2007, ML Stern had received zero responses indicating that the offer of settlement was rejected.

13       Even more telling, of the fifty-two Account Executives who accepted the settlement offer, fifteen

14  indicated that they would settle and execute the releases in exchange of only $50 total, while four other

15  individuals indicated that they would settle and execute the releases in exchange for total payments of

16  $650 or less.  These nineteen were entitled to more money as a result of the total months worked, but

17  indicated that they would accept *less* than offered in the letter.

18       In sum, the surveys and immediate responses to the ML Stern letter indicate that the putative

19  class members who are current ML Stern employees want nothing to do with this class action lawsuit.

20       **4.     Cases Directly on Point Support ML Stern's Position.**

21       Numerous decisions hold that pre-certification settlement offers made by a defendant to a

22  putative class are proper and subject to First Amendment protection.  Two such cases with similar fact

23  patterns as the ML Stern letter are presented here.

24

25

26

27

28
   [4]Plaintiffs argue that the letter was sent only to ML Stern's employees as providing some indicia of coercion.  To
   the contrary, the letter was directed to the employees because ML Stern knew that nearly all of its Account Executives had
   no desire to participate in the lawsuit.

1              **a.**        **The Kay Co., LLC v. Equitable Production Co.** *The Kay Co., LLC v. Equitable*

2     *Production Co.* (S.D.W.Va. September 21, 2007) -- F.R.D. --, 2007 WL 2758574, is almost directly on

3     point with the matter before the Court.  After the proposed class action complaint was filed and before

4     class certification had been determined, the defendant sent communications to the putative class

5     members proposing settlement.  Such communication occurred while the parties had stated an intent to

6     engage in "early resolution." *Id.* at pg. *1.  Upon learning of such communication, the plaintiffs brought

7     a motion seeking to limit the defendant's communications with the putative class arguing that the

8     communication was in violation of the parties' stated intent to engage in resolution discussions and that

9     the communication was improper.

10           The *Kay Co.* Court denied the plaintiff's request and held that the defendant could engage in

11    settlement discussions with the putative class members prior to class certification.  The Court first noted

12    that despite the parties' stated intent to engage in "early resolution," the defendant's conduct was not in

13    violation of any court order.[5]  Turning to the allegations of impropriety and using *Gulf Oil Co.* as its

14    guidepost, the Court held that in general defendants may discuss settlement offers with putative class

15    members prior to class certification. *Id.* at pg. *3, citing *Christensen v. Kiewit-Murdock Inv. Corp.* (2d

16    Cir. 1987) 815 F.2d 206, 213 ("prior to class certification, defendants do not violate Rule 23(e) by

17    negotiating settlements with potential members of the class"); *Cox Nuclear Med. v. Gold Cup Coffee*

18    *Servs., Inc.* (S.D. Ala. 2003) 214 F.R.D. 696, 699; *Jenifer v. Del. Solid Waste Authority* (D. Del. 1999)

19    1999 WL 117762. Specifically, the Court stated that "a limiting order should not be granted based solely

20    on allegations that the defendant wishes to communicate a settlement offer to the putative plaintiffs."

21    *Id.*  The Court noted that in order to ban communications between a party and a putative class, the

22    evidence must show more than a mere offer of settlement.  There must be some showing that the

23    communication is "abusive"; i.e., coercive, or that the communications contained false, misleading or

24    confusing statements. *Id.*  The Court concluded:

25

26

27    _____

28        [5]The Plaintiffs herein, as did the plaintiffs in *The Kay Co.*, point to the fact that counsel had been engaging in settlement discussions as indicia of bad faith. Per the Declaration of James Ballard filed herewith, ML Stern still desired and desires to engage in such discussions. The letter to the putative class does not change this desire.

1              Claims that the defendant merely communicated a settlement offer to a
     putative plaintiff will not provide the basis for a limitation.  Absent any
2    specific evidence that the communication is abusive, a limitation is
     inappropriate.

3    *Id.*

4              **b.**      ***Keystone Tobacco Co., Inc. v. United States Tobacco Co.***

5         *Keystone Tobacco, supra,* 238 F.Supp.2d 151, is strikingly similar to the facts before this Court.

6    In *Keystone Tobacco*, the defendant made settlement offers to the putative class members prior to class

7    certification.  The offers were sent *the day after oral argument on the class certification motion* but,

8    technically, prior to certification.  Upon the plaintiff's motion to preclude such communications, the

9    Court held that although it had the authority to limit communications between litigants and putative class

10   members, the settlement offers were not misleading or coercive.  In so holding, the Court noted that the

11   settlement letter included a draft settlement agreement and a copy of the plaintiffs' complaint. *Id.* at 153.

12   Additionally, the settlement letter, which was sent without the knowledge of the plaintiffs, also provided

13   the putative class members with the names and addresses of the plaintiffs' class counsel.  *Id.*

14        The plaintiffs moved to preclude the settlement communications, arguing that the defendant

15   provided incomplete, inaccurate and misleading information about the litigation and the value of the

16   plaintiffs' claims.  In denying said arguments, the Court began its analysis by noting that it had the

17   authority to limit communications between litigants and the putative class members prior to class

18   certification. *Id.* at 154.  However, the Court also noted that settlements are looked upon favorably by

19   the courts, particularly in complex class actions in which the court's resources may be heavily taxed by

20   prolonged litigation.  *Id.*, citing *In Re Exxon Valdez* (9th Cir. 2000) 229 F.3d 790, 795.  The Court then

21   focused its attention on whether the defendants provided misleading statements to the putative class

22   members in its settlement offer.  In making such determination, the Court adopted a three-pronged

23   standard as follows:

24             An offer to settle should contain sufficient information to enable a class
     member to determine (1) whether to accept the offer to settle, (2) the
25   effects of settling, and (3) the available avenues for pursuing his claim if
     he does not settle.

26   *Id.* at 155.  In other words, the Court was concerned only with the accuracy and completeness of the

27   disclosure and not with the consideration offered by the defendant.

28

1       The Court determined that the defendants had met this three-pronged standard. As for the first

2   prong, the Court noted that the putative class members had received the settlement letter, the settlement

3   agreement, a description of the present case and a discussion of the existence of additional pending

4   lawsuits. Additionally, the Court noted that the putative class members had received the complaint

5   which provided information allowing the putative class members to assess the value of the settlement

6   offer in light of the allegations. *Id.* at 155-156. As for the second prong, the Court noted that the

7   settlement agreement clearly explained the effects of settling. Not only were the to-be-released claims

8   defined, the putative class members were also encouraged to seek the advice of independent counsel in

9   helping them to understand the effects. *Id.* at 156. As for the third prong, the Court noted that the

10  defendant had included the complaint as well as contact information for the class counsel if the putative

11  class members wished to learn more about the merits of the claims before giving them up. *Id.* The

12  Court also found no evidence of coercion, noting that while an ongoing business relationship obviously

13  increases the possibility that communications between defendant and putative class members are

14  coercive, the existence of such a relationship is not enough by itself to justify precluding the

15  communication of settlement offers to putative class members. *Id.* at 158-159 (citations omitted).

16      The facts underlying the ML Stern letter and those set forth in *Keystone Tobacco* are precisely

17  the same. As in *Keystone Tobacco*, the ML Stern letter enclosed the draft settlement agreement, the

18  Plaintiffs' complaint and included contact information for the Plaintiffs' counsel. The ML Stern letter

19  provided the putative class members with sufficient and relevant information enabling the persons to

20  determine whether to accept the offer to settle, the effects of settling, and the available avenues for

21  pursuing his claim if he does not settle. As in *Keystone Tobacco*, this Court should deny any attempts

22  to curb or limit ML Stern's communications with the putative class.

23      **5.      The Cases Cited by Plaintiffs Are Not Availing**

24      The cases relied upon by Plaintiffs in their motion all deal with communications made by parties

25  *after* class certification, *after* the authorization of court-approved notice and/or *in violation* of a specific

26  court order. As such, the cases are not availing and do not support the Plaintiffs' request for limiting

27  orders, nullification of settlement agreements or sanctions. To wit:

28  / / /

a.    *Kleiner v. First National Bank of Atlanta*

*Kleiner v. First National Bank of Atlanta* (11th Cir. 1985) 751 F.2d 1193 has very little application to the facts before this Court. In *Kleiner*, the defendant sent communications soliciting exclusion requests from the putative class members *after* the class had been certified, *after* class notices had been approved by the court and *after* the court had issued an order instructing the defendant it was to have no contact with the class members other than in five depositions. *Id.* at 1196-1197. Despite this, the defendant engaged in a secret scheme to solicit said exclusion requests from the putative class members. The defendant specifically determined to make telephone calls rather than letters given the danger of putative members disregarding letters as junk mail. The defendant then made said telephone calls to coincide with the Judge's vacation. The defendant exerted its telephone callers to "do the best selling job they had ever done" and to do it quickly because "the Court might halt the program." The objective was to persuade the borrowers to "withdraw from the class." *Id.* at 1197-1198. The defendant tolerated no opposition to the communications program and indeed forced at least one person to resign when he refused to participate in the calling program. *Id.* at 1198, fn. 9.

Based upon the defendant's conduct, the Court struck the communications and issued sanctions. First and foremost, the Court found the defendant's conduct to be a knowing violation of a specific court order. *Id.* at 1200-1201. Second, the Court found the communications to have been sent for an improper purpose. Although the defendant argued that its action were intended to alleviate class confusion, the Court found that the defendant engaged in a scheme "to solicit as many exclusions as possible before the court was alerted to the operation." *Id.* at 1201, fn. 16. Finally, the Court found the entire operation to be rife with coercion. The Court noted that the defendant–a bank–sought exclusion requests from its own borrowers, "many of whom were dependent on the Bank for future financing." *Id.* at 1202. This included putative class members who would, in the future, be seeking to roll over notes, fund new loans, extend lines of credit, or rely upon the "discretionary financial indulgence" from loan officers and "who did not have convenient access to other credit sources." *Id.*

There are no similarities to the evidence in *Kleiner* and the evidence before this Court. ML Stern did not violate any Court order prohibiting communication; ML Stern did not send the letter post-certification; ML Stern did not send the letter after class notice had been crafted; ML Stern did not

1   threaten, explicitly or implicitly, its employees; ML Stern did not attempt an "end-around" the Court or

2   seek settlements before the Court was alerted to the process; and ML Stern did not coerce its employees.

3   The *Kleiner* case has little, if any, application to the instant facts.

4                           **b.      *Wang v. Chinese Daily News, Inc.***

5          Likewise, *Wang v. Chinese Daily News, Inc.* (C.D.Cal. 2006) 236 F.R.D. 485 does not support

6   Plaintiffs' request herein. In *Wang*, the plaintiffs alleged multiple labor violations and were successful

7   in getting the class certified pursuant to Rule 23. In issuing the order certifying the class, the Court

8   directed that notice and an opportunity to opt out be given to the class members. *Id.* at 487. After the

9   court issued the order approving the class notice, the plaintiffs mailed notice to the putative class

10  members and the defendant provided notice and opt-out forms in its workplace. Due to the suspicious

11  number of opt-outs that were submitted by the employees, plaintiffs filed a motion to invalidate the

12  returned opt-outs, to restrict defendant's communications with the class and for post-judgment curative

13  notice. *Id.* In making such request, the plaintiffs presented evidence that the employer forced the

14  employees to attend mandatory meetings at which time a large sign was placed on a table stating in

15  Chinese "Don't tear the company apart! Don't act against each other!" *Id.* Additionally, an employee

16  who was a strong supporter of the lawsuit was terminated in the middle of the opt-out period and only

17  six days after her second day of deposition. A separate employee was approached by management about

18  his involvement in the lawsuit. He was told that if he would drop out of the lawsuit he would be able

19  to meet with the president of the corporation. The employee was also subjected to a veiled threat that

20  if he continued with the lawsuit, he would lose his job of 15 years with the company and that the

21  employer would seek revenge against him. *Id.* at 488. The Court found evidence of implicit and

22  explicit threats made linking participation in the lawsuit with job security. *Id.* at 488. Based upon the

23  evidence, the Court found that the opt-outs submitted in the lawsuit were the product of a coercive

24  environment that pressured employees to opt out at the risk of losing their jobs. *Id.* at 489. The evidence

25  in *Wang* is inapposite to the facts before this Court.

26  / / /

27  / / /

28  / / /

c.      *Belt v. Emcare, Inc.*

Finally, *Belt v. Emcare, Inc.* (E.D. Tex. 2003) 299 F.Supp.2d 664 is not availing.  That case was a collective action under the Fair Labor Standards Act ("FLSA"), which is similar to the class action prosecuted under Rule 23.  Following the arguments of both parties as to communication with the class members, the Court crafted a form of notice incorporating proposals from both the plaintiff and defendant.  In spite of its own arguments against one party having unreviewed contact with absent class members and the Court's efforts to create a notice fair to all parties, the defendant unilaterally mailed its own letter to the absent class members just days before the Court's sanctioned notice was to be sent. *Id.* at 666.  The Court found that the defendant's letter misrepresented many of the issues in the action in such a way as to discourage absent class members from joining the suit.  The misrepresentations included suggesting that the action was an attack on the potential plaintiff's status as professionals; understating the amount of damages available by ignoring recoverable liquidated damages and attorneys' fees; and the letter tapped into fears held by many medical professionals that the lawsuit was akin to a medical malpractice suit. *Id.* at 666-667.  Additionally, the Court found the letter to be coercive by suggesting that the lawsuit could affect the potential class member's employment. *Id.* at 668.  Finally, the Court noted that in sending the letter with no notice to the plaintiff or the Court and one day before the defendant was to provide the plaintiff with the potential class members' addresses for the mailing of the court-approved notice, the defendant intended to subvert the Court's "carefully crafted" notice and the Court's role in administering the collective action. *Id.* at 669.

**6.      ML Stern Has Not Violated Any Professional Rule of Conduct.**

The author of the letter at issue, Mr. Stern is not subject to California Rules of Professional Conduct concerning communications between attorneys and clients because he is not an attorney.  Even if ML Stern's attorneys had communicated with the putative class members, there would not be a violation of the professional rules.  As no class has been certified, the putative members are just that: potential class members.  No attorney-client relationship has been established between Plaintiffs' counsel and ML Stern's employees.  There is no violation of California Rule of Professional Conduct 3-600 in communications with putative class members prior to class certification. *Maddock v. KB Homes, Inc.* (C.D. Cal. July 9, 2007) 2007 WL 2221030.

7.     **Plaintiffs' Requested Remedies Are Overreaching.**

Plaintiffs request that ML Stern's ability to communicate with its own employees be curbed, that the settlement agreements be nullified and that sanctions issued. Each request is overbroad and inappropriate based upon the facts before this Court.

In terms of limiting communications, as this brief makes clear, the ML Stern letter is an exercise of free speech and is entitled to Constitutional protection. As the letter is neither improper, misleading or coercive, there should be no limit on the communication and no prior restraint. Further, as the communication is proper and as settlement offers to putative class members are appropriate, there are no grounds to nullify any settlement agreements. Again, this Court should not force a class action litigation upon putative members who clearly are resistant to such tactics. Moreover, as the decision to enter into the settlement agreements was made freely, independently and of the putative members' own accord, the Court should not substitute its own judgment in nullifying the agreements.

Finally, Plaintiffs' request for sanctions must be denied. As Plaintiffs recognize, sanctions are only appropriate where a party has acted "in bad faith, vexatiously, wantonly or for oppressive reasons." *Zambrano v. City of Tustin* (9thCir. 1989) 885 F.2d 1473, 1478. Bad faith includes "willful improper conduct" where a litigant is motivated by "vindictiveness, obduracy or *mala fides*." *Fink v. Gomez* (9thCir. 2001) 239 F.3d 989, 992. Although Plaintiffs color their argument with such allegations as "egregious conduct" and "subversive actions," it is clear that the ML Stern letter is not in violation of any Court order or directive nor is it contrary to the law. Even assuming that the Court disagrees with the analysis as stated herein, it is clear that based upon the responses to the surveys and law as stated in cases such as *Keystone Tobacco, Kay Co.* and *Gulf Oil*, ML Stern had a good faith belief that its letter was proper and a good faith belief that it could extend settlement offers to the putative class in this pre-certification instance. This is not a situation such as that in *Kleiner* where the defendant *knowingly* violated a court order, timed the settlement offers to coincide with the Judge's vacation and terminated employees who would not participate in the program.

/ / /

/ / /

/ / /

1

## Conclusion

2       Based on the foregoing facts and legal authorities, ML Stern submits that no remedy is necessary

3   or appropriate because its communications with the putative class are Constitutionally-protected free

4   speech.  As the communications are not misleading, coercive or in violation of a Court order. the Court

5   should not limit the free speech nor grant Plaintiffs' requested remedies.  Should this Court have further

6   questions, ML Stern urges that oral argument be scheduled for this very important issue.

7   Dated: November 21, 2007                    Respectfully submitted,

8                                               SCHWARTZ SEMERDJIAN HAILE
                                                    BALLARD & CAULEY LLP
9

10

11                                              By: /s/ James R. Ballard
                                                    James R. Ballard, Esq.
12                                                  Sarah Brite Evans, Esq.
                                                    Attorneys for Defendant
13                                                  M.L. STERN & CO., LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ML STERN'S OPPOSITION TO MOTION TO LIMIT EX PARTE COMMUNICATIONS
18

07-cv-0118