James R. Ballard, Esq. (SBN 178122)
Sarah Brite Evans, Esq. (SBN 210980)
**SCHWARTZ SEMERDJIAN HAILE BALLARD & CAULEY LLP**
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone: (619) 236-8821
Facsimile: (619) 236-8827

Attorneys for Defendant
M.L. STERN & CO., LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE M.L. STERN OVERTIME LITIGATION | MASTER FILE: 07-0118 BTM (JMA) |
|  | **DECLARATION OF MILFORD L. STERN IN OPPOSITION TO PLAINTIFFS' MOTION TO LIMIT EX PARTE COMMUNICATIONS BETWEEN DEFENDANT AND MEMBERS OF THE PROPOSED CLASS, TO NULLIFY EXECUTED SETTLEMENT AND RELEASE AGREEMENTS AND TO IMPOSE SANCTIONS AND ATTORNEYS' FEES AND FOR OTHER RELIEF** |

I, Milford L. Stern, declare as follows:

1.      I am the president and chief executive officer of M.L. Stern & Co., LLC, positions I have held since I founded the company in 1980.

2.      I have personal knowledge of the following facts and, if called as a witness, could competently testify thereto.

3.      Since 1980, M.L. Stern has been a full service investment banking firm offering investors of substantial net worth the professional guidance and personal service necessary to grow, protect and transfer their wealth.  M.L. Stern is a licensed broker-dealer with FINRA, the Financial Industry Regulatory Agency.  M.L. Stern is also licensed by the Municipal Securities Rule-Making Board and licensed by 48 states to sell securities and by the State of California to sell insurance.

4.      M.L. Stern is a unique brokerage house.  We are a relatively small, close-knit company, currently comprised of 134 account executives in seven offices in California and Las Vegas.  Our offices

1   are located in high-income and high-net-worth areas (e.g. Beverly Hills, Carmel-by-the-Sea, etc.) and
2   we target those individuals with our investment advice and products.  This target market benefits our
3   Account Executives, who (once established) enjoy higher-than-industry-average commissions.  As a
4   result of this, the company enjoys relatively little turnover, especially among Account Executives who
5   survive the initial time necessary to establish clients.  In fact, of the approximately 130 account
6   executives working for M.L. Stern when these class action complaints were filed, eighty-nine of them
7   were employed for at least four years (which is the claimed length of the putative class period).  Thirty
8   of our Account Executives and managers have been working for M.L. Stern for more than fifteen years,
9   another fifteen have worked for M.L. Stern for between ten and fourteen years, and another eighteen
10  have worked for M.L. Stern for between five and nine years.

11      5.      After the class action lawsuit was filed, I distributed a survey to our Account Executives
12  on July 17, 2007, inquiring about information related to this litigation.  A blank copy of the survey is
13  attached hereto as Exhibit 1.  We received responses from eighty-three Account Executives, and I have
14  reviewed them all.  On all but one of the surveys, the Account Executives responded "no" to question
15  five, which asks, "Are you interested in pursuing any potential recovery from a class action lawsuit
16  against ML Stern seeking minimum wages, overtime pay and compensation for missed rest and meal
17  periods?"

18      6.      Against that backdrop, my letter which is at issue in this motion was sent to ninety-four
19  Account Executives on October 8.  A full and complete copy of this letter and its enclosures is attached
20  hereto as Exhibit 2.

21      7.      Before I sent my October 12, 2007 email (a copy of which is attached as Exhibit 3), we
22  had already fifty-two responses to my October 8 letter, accepting the offer.  Of these, fifteen indicated
23  that they would settle and execute the releases in exchange of only $50 total, while four other individuals
24  indicated that they would settle and execute the releases in exchange for total payments of $650 or less.
25  These nineteen were entitled to more money as a result of the total months worked, but told me in
26  written or verbal communications that they would accept *less* than we offered.

27      8.      Since I learned of this Court's order of a temporary stay on settlement discussions while
28  this motion is pending, I have had no discussions regarding the settlement agreements or the ML Stern

2

letter with the putative class members, and I have instructed all members of my senior management team to refrain from any such discussions as well. However, during this timeframe, at least ten more Account Executives expressed a desire to settle after I sent my October 12 email. Obviously, I did not discuss these desires with them at that point, due to this Court's order.

9.      We have received zero responses from Account Executives indicating that they wanted to reject our offer of settlement.

10.     When we left the September ENE, we learned of the Plaintiffs' $6.5 million settlement demand. This is more than this company currently has in net capital, and, as a result, such a payment should leave the company insolvent.

11.     My letter concludes by asking our Account Executives to respond by October 19, 2007. I included this deadline after deciding that it would provide them with a reasonable amount of time to consider the offer and consult with an attorney of their choice. We certainly would have accepted responses (accepting or rejecting settlement) after that date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 21st day of November, 2007, at Beverly Hills, California.

Milford L. Stern

3

07-cv-0118

**Exhibits Table of Contents**

Pg.No.

Exhibit 1      Survey of ML Stern Account Executives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-4

Exhibit 2      Letter to All Account Executives dated September 28, 2007  . . . . . . . . . . . . . .  2-5

Exhibit 3      Memo from Mickey Stern to All Account Executives dated
                October 12, 2007  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3-26

EXHIBIT 1

### SURVEY OF ML STERN ACCOUNT EXECUTIVES

1. Were you employed at ML Stern as of November 2006?

   _____yes _____no [If your answer is no, please jump to the end of this survey.]

2. During your employment at ML Stern, did you work as an account executive and/or account executive trainee?

   _____yes _____ no [If your answer is no, please jump to the end of this survey.]

3. Please tell us if, during your employment at ML Stern as an account executive and/or account executive trainee, your primary duties were work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting ML Stern's financial products.

   _____yes, those were my primary duties ____no, those were not my primary duties

   Comments (if any):




4. Please tell us, to the best of your ability, the average number of hours you worked per week while at ML Stern from 2002-2006.


5. Are you interested in pursuing any potential recovery from a class action lawsuit against ML Stern seeking minimum wages, overtime pay and compensation for missed rest and meal periods?

   _____yes, I am _____no, I'm not

Comments (if any):



Name (optional): _____

**Please return this to Melissa Cardona in a sealed envelope by August 3, 2007.
Thank you for your time.**

1-4

EXHIBIT 2



**ML Stern & Co., LLC**
Investment Securities
8350 Wilshire Blvd., Beverly Hills, CA 90211  (323) 658-4400  (800) 765-2200  www.mlstern.com

Date:    September 28, 2007
To:      All Account Executives
From:    Milford L. Stern
Re:      Class Action Litigation

Thank you to all who completed the recent survey regarding the lawsuit filed against M.L. Stern for alleged violations of labor laws regulating how the industry compensates employees such as yourself. We received 97 completed surveys, and the information was extremely helpful in determining how we will proceed in the defense of the action. This memo will provide an update on the lawsuit as well as outline a plan to offer compensation to you in exchange for a release of your claims against M.L. Stern. Please read this memo carefully and consider the points raised herein. I ask that you please respond by October 19, 2007.

1.       **Update on the Litigation**

M.L. Stern is a defendant in a lawsuit brought by former Account Executive Gerald Till, Craig Taggart and Denny Bilikas claiming that we improperly compensated Account Executives by not paying a minimum hourly wage and overtime pay. The lawsuit additionally claims that M.L. Stern improperly deducted certain expenses from its employees. The complaint against M.L. Stern is not unique: it contains the same boilerplate allegations as the other recently-filed lawsuits against brokerage houses seeking overtime and other wages that you may have read about.

The legal issue boils down to whether Account Executives should be classified as "exempt" or "non-exempt". Account Executives at M.L. Stern and in the securities industry in general have historically considered and conducted themselves as "exempt" and , therefore, not subject to time-keeping requirements and mandatory meal and rest breaks and not entitled to minimum wages, overtime pay, etc. The lawsuit challenges this classification and seeks unpaid minimum wages, overtime pay, and compensation for missed meal and rest periods that hourly, non-exempt workers are entitled to receive. It also challenges M.L. Stern's practices for expense sharing. We are aggressively defending the claims.

An aggressive defense against these claims makes sense from our perspective and, we believe, from your perspective as well. If the Plaintiffs' theory in this case is correct, M.L. Stern Account Executives should have been treated as hourly employees --- required to use a time clock or a time card to keep track of hours worked, subject to mandatory rest and meal breaks, and unable to work overtime absent prior supervisor approval. That is simply not the tradition or history of account executives in the industry nor of our Account Executives. Account Executives must be able to work his or her desired hours free from the constraints of the typical hourly employee or face a loss of clients and business. We believe in more freedom for our Account Executives and few, if any, guidelines on when you *must* take breaks and when you *must* leave the office. This allows you to earn higher-than-industry-average commissions and

explains the unprecedented longevity that Account Executives stay with M.L. Stern. This, in turn, contributes to the family atmosphere and entrepreneurial culture that are so crucial to M.L. Stern's business now and in the future.

2.      **Potential Class Action.**

Although the lawsuit is currently being pursued by Till, Taggart and Bilikas, their attorneys have indicated that they intend to pursue the claims as class actions. The Court would need to certify the case as a class action and, if it does so, it would mean that you could potentially join the lawsuit as a plaintiff against M.L. Stern.

If that is the case and assuming that we do not prevail in the litigation, you may be entitled to recover money at the end of the trial. There is no set formula or calculation for any potential recovery. Should the Plaintiffs' counsel prevail on their theory, recovery could include wages for the overtime you should have received, penalties for missed meal periods, and reimbursement for any improperly deducted expenses. Since none of the previous cases against other brokerage houses have gone to trial, we really have no sense of what the Plaintiffs' recovery might be at trial.

Based upon the procedures that still must occur (class certification chief among them), the discovery that will ensue, and the pleadings battles that will result, we do not believe that the trial will occur within a year and could occur as far as two years out. A settlement of all claims currently appears impossible. Frankly, settling for the amount that the Plaintiffs currently demand would severely impact the company's net capital requirements and make it difficult for M.L. Stern to stay in business and out of bankruptcy.

3.      **Monetary Compensation**

Because of the uncertainty involving Plaintiffs' legal theories, the potential recovery, if any, and the time it will take to resolve all these issues, M.L. Stern has decided to offer monetary compensation to each current Account Executive as a way of being able to predict the resources and time commitment that this litigation is likely to require these next few years. This determination is not made from a point of weakness and should not be interpreted as a signal that we lack faith in our defense. Simply, M.L. Stern would rather pay a known amount of money now to resolve the potential claims rather than face an uncertain future. Additionally, if there is to be a payment to our own Account Executives, we would rather have that money paid directly by us to you rather than reward the named Plaintiffs and the attorneys.

Previous settlements of wage and hour claims against other brokerage houses have used a simple formula for determining the money paid to potential plaintiffs: Total months worked during the claim period multiplied by a negotiated number. For example, in the most recently settled case against Morgan Stanley, each plaintiff who chose to be a part of the class received an amount equal to the total number months he/she worked during the claim period multiplied by $219. The $219 multiplier was an agreement between counsel and took into account many variables, including Morgan Stanley's ability to pay and the type and strength of

2-6

the claims. For many reasons, we believe that any multiplier that would or could be used in a case against M.L. Stern will be significantly lower. For one thing, we certainly do not have the resources of a firm like Morgan Stanley. Second, and most important, we believe our defense is much stronger than that of Morgan Stanley and much stronger than that of any of the firms that have settled to date.

So, M.L. Stern's offer of compensation to you is: Total months you have worked during claim period multiplied by $50. We have calculated the number of months each of you has worked during the applicable claim period of four years (November 1, 2002 – November 1, 2006). Obviously, then, there is a maximum of 48 months of potential recovery. Those of you that have been with M.L. Stern throughout that time are eligible to receive 48 months (x) $50 or $2,400. We can provide each of you with your total number of months worked during the claim period to help you evaluate if you would like to accept this cash offer.

If you do decide to accept this offer, M.L. Stern will require that you sign the attached document expressly waiving your right to participate in the potential class action and expressly waiving your claims, real or potential, for past due overtime wages, missed meal periods and expense payments. In sum, you will be giving up you potential right asserted in the lawsuit. The release is strictly limited to those claims; M.L. Stern is not requiring or asking you to waive any other claims other than those currently pending before the Federal Court.

There is no denying that you could potentially recover more should you participate in the class. There is also no denying that your recovery could be less should our attorney's arguments prove persuasive or should the class action Plaintiffs recover an amount that would bankrupt the company.

4.   **Further Consultation**

We make the above offer to you taking likely scenarios into account and believe that the offer is fair. You, however, need to make a decision for yourself. Since we are requiring that you waive your right with respect to past wage claims, we suggest that you consult with an attorney of your choosing. You may also wish to consult with James Ballard, the attorney representing M.L. Stern in this matter, or with Gerald Wells, the attorney representing Till, Taggart and Bilikas. Their contact information is as follows:

James Ballard
Schwartz Semerdjian Haile Ballard & Cauley LLP
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone (619) 236-8821
jim@sshbclaw.com

2-7

Gerald D. Wells, III
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone (610) 667-7706
gwells@sbtklaw.com

### 5.    Further Action

As stated, if you would like to know how many months you worked during the claim period, we can provide that information to you. Once you have your information, if you are interested in receiving compensation as outlined above, we simply need you to sign the attached release and return it directly to me. You will receive your check in return. Even if you are not interested in receiving compensation or taking any action at this point, we would like to know that. Absolutely no adverse actions will be taken against you no matter what you decide to do. We respect the fact that some of you may chose to take part in the class action and will not harbor any ill will accordingly.

Please respond to me directly by October 19, 2007.

Sincerely,

Milford L. Stern
CEO

2 - 8

# SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** ("Agreement") is made between **M.L. STERN & CO., LLC** ("Company") and the person identified below under the heading "Account Executive" who agree as follows:

1.      Account Executive has been and continues to be employed by Company. Nothing in this Agreement affects the terms of Account Executive's employment with the Company.

2.      Gerald Till, Denny Bilikas and Craig Taggart (collectively, "GT, DB and CT") have filed a Complaint in the United States District Court for the Southern District, Case No. 07-0118 BTM (JMA), alleging that Company improperly compensated its account executives (including Account Executive) by not paying a minimum hourly wage and overtime pay (the "Complaint"). The Complaint additionally claims that Company improperly deducted certain expenses from its employees. Account Executive hereby acknowledges having been provided with a copy of the Complaint. The allegations contained in the Complaint are incorporated by this reference.

3.      Company denied and continues to deny the allegations of the Complaint.

4.      Although the Complaint purports to be a "class action complaint," no motion certifying a class has been brought and the Complaint has not yet determined to be a class action. However, GT, DB and CT have indicated that they intend to certify the Complaint as a class and, therefore, Account Executive could potentially be included as a class member in the lawsuit and be a plaintiff against Company.

5.      The Complaint is referred to herein as the "Ongoing Litigation."

6.      The parties desire to resolve all aspects of the Ongoing Litigation pursuant to the provisions of this Agreement.

7.      **Payment**: Concurrently with the mutual execution of this Agreement, Company shall pay to Account Executive _____ Dollars ($_____) (less all taxes and withholdings required under federal, state and local law) in full satisfaction of all claims that Account Executive has, had or could have had arising out of the Ongoing Litigation or in any way related thereto.

8.      **Release:** Except for claims arising under this Agreement, Account Executive, for himself/herself and on behalf of his/her successors and assigns, does hereby release, acquit and agree to a complete settlement of any and all claims, actions, causes of action, demands, rights, damages, costs and expenses whatsoever, known and unknown, foreseen and unforeseen (collectively, "claims"), that Account Executive may have against Company and/or the Company's representatives, successors, assigns, agents, employees, attorneys, parent corporations, subsidiaries, affiliates, shareholders, directors, officers, managers, members, and each of them, arising out of or in any manner related to the Ongoing Litigation. Account Executive acknowledges that, by executing this Agreement, Account Executive is releasing any right to participate as a class member in the Ongoing Litigation.

2-9

9.    **Waiver**: California Civil Code Section 1542 states:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Account Executive acknowledges that Account Executive has read all of this Agreement, including the above Civil Code Section, and Account Executive fully understands both this Agreement and the Civil Code Section. Account Executive waives any benefits granted to Account Executive pursuant to Civil Code Section 1542.

10.    Account Executive agrees that all matters relating to this Agreement shall be confidential. Account Executive agrees that neither Account Executive nor any of Account Executive's attorneys, agents, relatives, family members or other persons under Account Executive's direction or control, shall make, issue, disseminate, publish, print or announce any news release, public statement or announcement with respect to these matters, or any aspect thereof, the reasons therefor or the terms of this Agreement unless disclosure is otherwise required by law.

11.    Account Executive will not prosecute any claim against Company related to the Ongoing Litigation before any administrative agency or in any court.

12.    Account Executive declares that no promise has been made to Account Executive that is not contained in this Agreement.

13.    It is understood that this Agreement is not an admission of liability by either party.

**ATTENTION: THIS DOCUMENT CONTAINS A RELEASE AND WILL AFFECT YOUR LEGAL RIGHTS. BY SIGNING THIS AGREEMENT YOU ARE ACKNOWLEDGING THAT YOU WERE ADVISED TO AND HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL PRIOR TO EXECUTING THIS AGREEMENT AND THAT YOU ARE SIGNING THIS AGREEMENT OF YOUR OWN FREE WILL AND NOT AS A RESULT OF OPPRESSION, UNDUE INFLUENCE OR ANY OTHER REASON.**

Company:                                          Account Executive:

    Dated: _____            Dated: _____

    **M.L. STERN CO., LLC**

    By: _____             _____
        Its: _____              (Print name)

nj\mlstern\docs\employ.release (form) 1.doc

2 - 10

CAL __B H - 6-25-07__
DATE _6·5·07___

SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Alan R. Plutzik (Bar No. 077785)
L. Timothy Fisher (Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

- and -

Joseph H. Meltzer
Gerald D. Wells, III
Katherine B. Bornstein
Robert J. Gray
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Interim Lead Counsel**
**[Additional Counsel listed**
**on signature page]**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE M.L. STERN<br>OVERTIME LITIGATION | MASTER FILE: 07-0118 BTM (JMA)<br><br>**CONSOLIDATED CLASS ACTION**<br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

2-11

Gerald Till, Denny Bilikas and Craig Taggart (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated allege as follows:

## INTRODUCTION

1.     As explained herein, under applicable employment laws, Securities Brokers (defined below) are entitled to premium overtime compensation.  In short, if a Securities Broker works over forty hours per week and/or eight hours per day, they are entitled to overtime pay.

2.     Plaintiffs bring this action as a state-wide class action on behalf of all current and former Securities Brokers within the State of California who are or were employed by M.L. Stern & Co., LLC. ("Stern") or any other parent, subsidiary, related, or successor companies (collectively, the "Company"), to recover overtime compensation and other wages due pursuant to the California Labor Code, Industrial Welfare Commission Wage Orders and Business Professional Code (collectively the "CA Labor Laws").  As used herein, the term "Securities Brokers" shall be defined as: individuals who originated, sold and/or marketed stocks, bonds, mutual funds, annuities, tax-deferred investments and/or other financial products ("Financial Products") to individuals and institutions on behalf of Defendant (defined herein), including but not limited to employees with any one of the following job titles:  (i) Securities Broker, (ii) Investment Executive, (iii) Account Executive, (iv) Financial Sales Representative (v) Investment Representative, and/or (vi) Financial Advisor.

3.     Plaintiffs are unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this complaint once their identities become known to Plaintiffs.  Upon information and belief, Plaintiffs allege that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein, which was in the course and scope of and in furtherance of such relationship.  Unless otherwise specified, Plaintiffs will refer to all

2

2-12

defendants, including the Company, collectively as "Defendant" and each allegation pertains to each Defendant.

## SUMMARY OF CLAIMS

4.      Plaintiffs bring this suit on behalf of two classes of similarly situated persons composed of :

a.      All current Securities Brokers who work for Defendant in the State of California and are engaged in, or are training to be engaged in, the business of selling and marketing Financial Products (the "Class A"); and

b.      All former Securities Brokers who have worked for Defendant in the State of California and were engaged in, or were training to be engaged in, the business of, selling and marketing Financial Products who would otherwise be members of the CA Class A (the "Class B").

5.      Class A and Class B are hereafter collectively referred to as the "Classes."

6.      Plaintiffs allege on behalf of the Classes that Defendant violated the California Labor Laws by, *inter alia*,: (i) failing to pay them overtime at the rate of one and one-half times the employee's regular salary for all hours worked in excess of 40 hours in any given workweek, and/or in excess of eight (8) hours in a workday; (ii) failing to provide the prevailing minimum wage for all hours worked; (iii) failing to provide them with all of their required meal and rest breaks; (iv) impermissibly deducting monies from their compensation; and (v) failing to retain and provide accurate records of actual hours worked and wages earned by Plaintiffs and the Classes.

7.      As a result of Defendant's violation of the CA Labor Laws, Plaintiffs and the Classes were illegally under-compensated for their work.

## FACTUAL ALLEGATIONS

8.      Plaintiffs and the other similarly situated members of the Classes are/were inside sales people, and/or trainees to become sales people, engaged in the sale of Financial Products

3

2 ~ 13

1   on behalf of Defendant, that Defendant paid primarily on a commission basis without any
2   premium for overtime pay as required by law.

3       9.      Due to the nature of the job responsibilities and requirements of Defendant's
4   Securities Brokers, Plaintiffs and members of the Classes were, and continue to be, required to
5   work more than 40 hours a week and/or 8 hours per workday during the course of their
6   employment with Defendant.

7       10.     Unless proven to be exempt from the protection of overtime laws, all employees
8   are entitled to premium overtime pay for work in excess of 40 hours per week and/or 8 hours
9   per workday.
10

11      11.     The duties of Securities Brokers are set forth in uniform, company-wide policies
12  and procedures promulgated by Defendant.   Defendant's employment policy regarding
13  Securities Brokers did not require them to hold an advanced degree.

14      12.     Pursuant to Defendant's uniform employment policies, Securities Brokers were
15  paid principally on a commission basis, irrespective of the hours actually worked, and were
16  unlawfully classified as exempt from overtime compensation.

17      13.     Although the CA Labor Laws provide for certain exemptions to the mandates of
18  paying overtime compensation, no exemption applies in the instant matter.

19      14.     First and foremost, Plaintiffs and members of the Classes are not
20  administratively exempt because, among other things, their primary duty is the sale of Financial
21  Products on behalf of Defendant, and not the performance of office work directly related to
22  management policies.  Nor do Securities Brokers regularly and directly assist a proprietor or an
23  exempt administrator.

24      15.     Securities Brokers also do not fall under the executive exemption, because their
25  primary duty is not the management of Defendant's offices.   Nor do Securities Brokers
26  customarily or regularly direct the work of at least two (2) or more employees, or have the
27  authority to hire and fire employees.
28

2-14

16.     Finally, Securities Brokers do not qualify for the professional exemption described in the CA Labor Laws, because Securities Brokers are not employed in a *bona fide* professional capacity.   Moreover, the professional exemption is for employees who are employed in recognized field that requires a specific degree in a field of science or learning. Put another way, because Securities Brokers are not required to have a degree in the sale of Financial Products, the professional exemption does not apply.

17.     As such, Securities Brokers, including Plaintiffs and members of the Classes, have been wrongfully classified by Defendant and are not exempt from the requirement of premium overtime pay.

18.     In violation of the CA Labor Laws, Plaintiffs and the members of the Classes are/were not paid for all the hours worked in a given workweek, and are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate of pay for work performed beyond the 40 hour work week and/or 8 hours per workday.

19.     Plaintiffs allege on behalf of the members of the Classes that Defendant's failure to pay overtime was knowing and willful.   Accordingly, Plaintiffs and the members of the Classes are entitled to recover all overtime pay due from overtime hours worked for which premium compensation was not paid.

20.     Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every other member of the Classes, as well as the applicable compensation rates, is in the possession of Defendant.   If these records are unavailable, members of the Classes may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

21.     Further, when a client of Defendant alleges that a Securities Broker made a mistake in a trade, Defendant, without investigation or collaborating evidence, withholds a portion a the broker's compensation to cover the alleged "error."

22.     Each of the foregoing acts is in contravention of applicable employment laws.

5

2-15

## PARTIES

23.    Gerald Till ("Till") is a resident of the State of California who was employed by Defendant as a Securities Broker in their San Diego office, who Defendant failed to adequately compensate for all hours worked, including those above and beyond the forty hour work week.

24.    Denny Bilikas ("Bilikas") is a resident of the State of California who was employed by Defendants as a Securities Broker in their Beverly Hills office, who Defendant failed to adequately compensate for all hours worked, including those above and beyond the forty hour work week.

25.    Craig Taggart ("Taggart") is a resident of the State of California who was employed by Defendants as a Securities Broker in their Beverly Hills office, who Defendant failed to adequately compensate for all hours worked, including those above and beyond the forty hour work week.[1]

26.    Defendant Stern is a corporation organized and existing under the laws of the State of Delaware that maintains it headquarters at 8350 Wilshire Boulevard, Beverly Hills, CA. At all relevant times during the applicable class period, Defendant maintained numerous offices within the State of California. Defendant employs, upon information and belief, hundreds of Securities Brokers and various assistants in the State of California alone at any one time.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to California Code of Civil Procedure Section 382 on behalf of himself and the following persons similarly situated (the "Classes"):

> All persons within the State of California who: (i) are/were employed as Securities Brokers with the Company; (ii) are/were not paid for all the hours worked in a given workweek; (iii) are/were not paid premium overtime compensation at a rate not less than one and one-half times their regular rate of pay for work

---

[1]    Plaintiffs reserve the right to add additional named plaintiffs.

6

2-16

performed beyond the forty (40) hour work week, and/or eight (8) hours in a workday; and (iv) were not provided with all required meal and rest breaks (the "Class Members").

28.     In addition to the common issues of fact described below, the Class Members have numerous common issues of fact, including whether Defendant: (i) failed to compensate adequately the members of the Classes for overtime hours worked as required by California Wage Order 4-2001, 8 C.C.R. § 11040 and Labor Code Section 510(a); (ii) committed an act of unfair competition under Business & Professional Code § 17200 *et seq.*, by not paying the required overtime pay as required by applicable employment laws; (iii) failed to compensate adequately the members of the California Class for hours worked as required by California Wage Order 4-2001, 8 C.C.R. § 11000 and Labor Code Section 1194; (iv) failed to provide all required meal and rest breaks in violation of Labor Code Section 226.7; (v) failed to maintain and provide members of the Classes with accurate and detailed records of hours worked and wages earned, pursuant to CA Labor Code § 226(a); and (v) damaged members of the Classes, and if so, the extent of the damages.

29.     The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of the Classes is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are, at minimum, hundreds of individuals in the Classes.

30.     Moreover, the proposed classes are ascertainable in that their members can be identified and located through Defendant's payroll and personnel records.

31.     Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained counsel that is experienced and competent in class action and employment litigation. Plaintiffs have no interests that are contrary to, or in conflict with, members of the Classes.

32.     A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation,

7

2-17

1   making it virtually impossible for members of the Classes to individually seek redress for the
2   wrongs done to them.

3       33.    A class action is, therefore, superior to other available methods for the fair and
4   efficient adjudication of the controversy. Absent this action, the members of the Classes likely
5   will not obtain redress of their injuries and Defendant will retain the proceeds of their
6   violations of the CA Labor Laws.

7       34.    Furthermore, even if any member of the Classes could afford individual
8
9   litigation against the Company, it would be unduly burdensome to the judicial system. The
    instant methodology, when compared to voluminous individual actions, has fewer management
10  difficulties and provides the benefits of unitary adjudication, economies of scale, and
11  comprehensive supervision by a single court. Concentrating this litigation in one forum will
12
13  promote judicial economy and parity among the claims of individual members of the Classes
14  and provide for judicial consistency.

15      35.    There is a well-defined community of interest in the questions of law and fact
16  affecting the Classes as a whole. The questions of law and fact common to each of the Classes
17  predominate over any questions affecting solely individual members of the action. Among the
18  common questions of law and fact are:

19          a.    Whether the Defendants employed the members of the Classes within the
20              meaning of the applicable statutes;

21          b.    Whether Securities Brokers were willfully, uniformly and wrongfully
22              classified by Defendant as exempt from overtime compensation;

23          c.    Whether Defendant failed to pay Plaintiffs and members of the Classes
24              all premium overtime compensation due to them by virtue of their
25              wrongful designation as exempt;
26
            d.    Whether Plaintiffs and members of the Classes were expected to and/or
27              mandated to regularly work hours in excess of forty (40) per week and/or
28              eight (8) per workday;

2-18

e.      Whether Defendant failed to pay Plaintiffs and members of the Classes
        for all hours worked;

f.      Whether Defendant violated any other statutory provisions regarding
        compensation due to Plaintiffs and members of the Classes; and

g.      Whether Plaintiffs and the Classes have sustained damages, and if so,
        what is the proper measure of damages.

36.     Plaintiffs know of no difficulty that will be encountered in the management of
this litigation that would preclude its continued maintenance.

## COUNT ONE

37.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this
Complaint as if fully set forth herein.

38.     The Fair Labor Standards Act, 29 U.S.C. Section 201 *et seq.* ("FLSA"),
mandates that an employee must be paid overtime compensation in an amount equal to one and
one-half times the employee's regular rate of pay for all hours worked in excess of forty per
week.

39.     Plaintiffs and members of the Classes regularly worked more than forty hours
per week, but were not paid overtime compensation in an amount equal to one and one-half
times the employee's regular rate of pay.

40.     Plaintiffs and members of the Classes do not meet the tests for exemptions under
the FLSA.

41.     Defendant has committed an act of unfair competition under Bus. & Prof. Code
Section 17200 *et seq.* by not paying the required FLSA overtime pay to the members of the
Classes.

42.     Pursuant to Bus. & Prof. Code Section 17203, Plaintiffs request an order
requiring Defendant to make restitution of all FLSA overtime wages due to the Classes in an
amount to be proved at trial.

9

2-19

## COUNT TWO

43.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

44.   California Wage Order 4-2001, 8 C.C.R. Section 11040 and Labor Code Section 510(a) state that an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty per week, and/or eight per day, unless the employee falls under one of the enumerated exemptions.

45.   California Labor Code Section 510(a) further states that any work in excess of twelve (12) in one day shall be compensated at a rate of no less than twice the employee's regular rate of pay.

46.   Plaintiffs and members of the Classes regularly worked more than 40 hours per week, and/or 8 hours per day, and received no premium pay for these hours.

47.   During at least some portion of applicable class period, Plaintiffs and members of the Classes did not meet the tests for exempt status under the California Wage Orders and California Labor Code.

48.   Defendant has committed an act of unfair competition under Bus. & Prof. Code Section 17200 *et seq.* by not paying the required state law overtime pay to the members of the Classes.

49.   Pursuant to Bus. & Prof. Code Section 17203, Plaintiffs request an order requiring Defendant to make restitution of all state law overtime wages due to the Classes in an amount to be proved at trial

## COUNT THREE

50.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

51.   Pursuant to California Labor Code Section 1194, Plaintiffs and members of the Classes are entitled to recover their overtime wages, plus interest, attorney's fees, and costs, in amounts to be proven at trial.

2-20

## COUNT FOUR

52.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

53.    California Wage Order 4-2001, 8 C.C.R. Section 11000, states that an employer shall pay to each employee a minimum wage for each hour worked, unless the employee falls under an enumerated exemption.

54.    Plaintiffs and members of the Classes were paid on a commission basis, receiving no wages for the hours worked, unless they finalized a sale of a Financial Product.

55.    Pursuant to California Labor Code Section 1194, Plaintiffs and members of the Classes are entitled to recover their wages, plus interest, attorney's fees, and costs, in amounts to be proven at trial.

## COUNT FIVE

56.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

57.    Defendant willfully and intentionally failed to pay Plaintiffs and the other members of Class B all the wages they were due by the deadlines imposed under Labor Code Sections 201 and 202 upon cessation of the class members' employment with Defendant. Accordingly, Plaintiffs and members of Class B are entitled to waiting time penalties of up to thirty (30) days' pay, in an amount to be proven at trial.

## COUNT SIX

58.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

59.    Labor Code Sections 221 and 2802, as well as applicable case law, state that an employer may not deduct from or reduce an employee's wages for the purpose of shifting the employer's ordinary cost of doing business to that employee.

11

2-21

60.     Specifically, Section 221 states that it "shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

61.     Nevertheless, Defendant, pursuant to their Company-wide policy, inappropriately required members of the Classes to bear all losses sustained from "reversed" trades in which the members of the Classes were involved.

62.     Defendant has subjected members of the Classes to illegal deductions from wages, which deductions were not the result of dishonest, willful or grossly negligent acts by those employees, but instead were ordinary costs of doing business for the Company.

63.     Defendant has committed an act of unfair competition by illegally deducting from the wages and commissions of the Classes.

64.     Pursuant to Bus. & Prof. Code section 17203, Plaintiffs request Defendant make restitution of all unpaid wages due to the Classes, in an amount to be proven at trial.

## COUNT SEVEN

65.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

66.     Due to Defendant's treatment of Plaintiffs and members of the Classes as exempt when they were not exempt, Defendant failed to provide Plaintiffs and members of the Classes with all meal breaks required by Labor Code § 512.  As a result, pursuant to Labor Code section 226.7, Plaintiffs and members of the Classes are entitled to one hour of additional pay at their regular rate of pay for each day a meal break was not provided, in an amount to be proved at trial.

## COUNT EIGHT

67.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

68.     Due to Defendant's treatment of Plaintiffs and members of the Classes as exempt when they were not exempt, Defendant failed to provide Plaintiffs and members of the

12

2~22

Classes with all rest breaks required by Labor Code § 512. As a result, pursuant to Labor Code section 226.7, Plaintiffs and members of the Classes are entitled to one hour of additional pay at their regular rate of pay for each day a rest break was not provided, in an amount to be proved at trial

## COUNT NINE

69.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

70.     Due to Defendant willfully and wrongfully classifying Plaintiffs and members of the Classes as exempt when they were not exempt, Defendant failed to provide Plaintiffs and members of the Classes with accurate and detailed records of hours worked and wages earned required by Labor Code Section 226(a).

71.     Therefore, Plaintiffs, on behalf of the Classes, request all such relief that this Court deems appropriate pursuant to the CA Labor Laws.

## COUNT TEN

72.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73.     As alleged in Counts Four, Seven and Eight above, Defendant has committed an act of unfair competition under Bus. & Prof. Code Section 17200 *et seq.* by not paying the required state law minimum wage pay for all hours worked and providing all required meal and rest breaks to Plaintiffs and the members of the Classes.

74.     Pursuant to Bus. & Prof. Code section 17203, Plaintiffs request Defendant make restitution of all unpaid wages due to the Classes, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.      A Declaration that Defendant has violated the CA Labor Laws;

B.      An Order designating the this action as a California state class action;

C.      An Order appointing Plaintiffs and interim lead counsel to represent the Classes;

13

2-23

D.    Imposition of a Constructive Trust on any amount by which Defendant was unjustly enriched at the expense of the Classes as the result of the actions described above;

E.    An Order enjoining Defendant from any further violations of the CA Labor Laws;

F.    For compensatory and punitive damages and all other statutory remedies permitted;

G.    Prejudgment Interest;

H.    An Order awarding attorneys' fees and costs;

I.    An Order for equitable restitution of all wages improperly withheld or deducted by Defendant; and

J.    For all other relief as the Court deems just.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

DATED: June 5, 2007.       SCHIFFRIN BARROWAY
                             TOPAZ & KESSLER, LLP

                             By:_____s/Alan R. Plutzik_____
                             Alan R. Plutzik
                             L. Timothy Fisher
                             2125 Oak Grove Blvd.
                             Suite, 120
                             Walnut Creek, CA 94598
                             Telephone: 925-945-0200
                             Facsimile: 925-945-8792
                                 -and-
                             Joseph H. Meltzer
                             Gerald D. Wells, III
                             Katherine B. Bornstein
                             Robert J. Gray
                             280 King of Prussia Road
                             Radnor, PA 19087
                             Telephone: 610-667-7706
                             Facsimile: 610-667-7056

                             *Interim Lead Counsel*

14

2-24

Mark Yablonovich
Marc Primo
Joseph Cho
Gregory Yu
Initiative Legal Group LLP
1875 Century Park East, Suite 1800
Los Angeles, CA 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

*Attorneys for Plaintiffs*

15

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. MASTER FILE: 07-0118 BTM (JMA)

2-25

EXHIBIT 3

**From:** Stern, Mickey [mailto:SternMickey@MLSTERN.com]
**Sent:** Friday, October 12, 2007 1:46 PM
**To:** Accout Executives
**Cc:** Jim Ballard
**Subject:**

Counsel for the proposed class has objected to my September 26, 2007, letter to each of you and to the proposed settlement agreement attached thereto. The matter has been placed before the Court and the Judge is expected to review the issues in December. M.L. Stern can take no further action on the letter or any settlement pending the Court's resolution of the matter. Please disregard the October 19, 2007 deadline to respond. We will provide an update after the Court has given us direction.

It is important that you do not use e-mail to request, authorize or effect the purchase or sale of any security or commodity, to send fund transfer instructions, or to effect any other transactions relating to your account.
Any such request, orders, or instructions that you send will not be accepted and will not be processed by M. L. Stern & Co., LLC.
The information in this email is intended only for the use of the individual or entity to whom it is specifically addressed and should not be read by, or delivered to any other person.
This material may contain confidential, private and/or privileged information.
The disclosure or use of this material by someone other than the intended recipient may result in a breach of certain laws or infringement of the rights of third parties.
If you have received this email in error, please notify the sender immediately by phone at 800.765.2200, Compliance Department, and delete from your system.

Thank you

10/12/2007

3-26