1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| IN RE M.L. STERN<br><br>OVERTIME LITIGATION | ) Case No. 07-CV-0118-BTM (JMA)<br>)<br>)<br>) **ORDER GRANTING JOINT**<br>) **MOTION FOR PRELIMINARY**<br>) **APPROVAL OF CLASS ACTION**<br>) **SETTLEMENT**<br>) **[Doc. 66]**<br>)<br>)<br>) |

18    Plaintiffs Gerald Till, Denny Bilikas and Craig Taggart ("Plaintiffs" or "class

19  representatives") and Defendant M.L. Stern & Co., LLC ("M.L. Stern" or "Defendant")

20  filed a joint motion requesting that the Court: (1) grant  preliminary approval of the

21  proposed settlement; (2) certify the settlement class for settlement purposes only; (3)

22  approve the form and manner of providing notice to the settlement class; and (4) schedule

23  a date for the final fairness approval hearing ("Joint Motion").  The Court has reviewed

24  all papers filed in support of the Joint Motion and hereby GRANTS the Joint Motion.

25  **I. Factual and Procedural Background**

26    On June 5, 2007, Plaintiffs filed a consolidated class action complaint against M.L.

27  Stern, alleging that it: (1) misclassified its Account Executives as exempt employees,

28  thereby denying them overtime pay in violation of California law; (2) failed to

compensate them at the prevailing minimum wage rate; (3) failed to provide them with all of their required meal and rest breaks; (4) took illegal deductions from their wages; and (5) failed to retain and provide accurate records of actual hours worked and wages earned by Plaintiffs and the class.  Stipulation of Settlement ("Settlement") at ¶¶ 30-31.

The parties conducted discovery and Plaintiffs reviewed over 1,200 pages of documents produced by M.L. Stern.  Declaration of Gerald D. Wells, III in support of the Joint Motion ("Wells Decl."), ¶ 17.   Plaintiffs' counsel contend that they conducted a thorough investigation into the facts of this case and diligently investigated class members' claims against M.L. Stern, including: (1) interviewing class members and analyzing the results of class member interviews; (2) reviewing relevant documents; and (3) researching the applicable law and the potential defenses.  Settlement at ¶ 34.

On September 6, 2007, the parties participated in an Early Neutral Evaluation conference ("ENE") with the undersigned magistrate judge.  After the ENE, Defendant obtained settlement releases from all but one of its then-current Account Executives.  *Id.* at ¶ 33.

On July 10, 2008, the parties engaged in an all-day mediation with attorney Linda Singer, a well-respected mediator experienced in wage and hour litigation. The mediation resulted in the settlement that is now presented to this Court for preliminary approval.  *Id.*

**II. The Proposed Settlement**

Defendant agrees to pay $945,960 into an interest-bearing account within 15 days after the date of the entry of this Order.  *Id.* at ¶¶ 27, 44.  Prior to distribution to class members, the settlement fund will be used to pay: (I) notice costs; (ii) attorneys' fees in the maximum amount of 25% and expenses, subject to Court approval; (iii) $15,000 for each of the three class representatives for their services relating to class representation, subject to Court approval; (iv) reasonable claims administration costs; and (v) $20,000 to the California Labor Workforce Development Agency for its share of the claims for penalties under the California Labor Code Private Attorney General Act.  *Id.* at ¶40.

07cv0118

**III. Certification of a Settlement Class**

      The parties have stipulated, for settlement purposes only, to certification of a class consisting of: "All persons who were employed by M.L. Stern in a Covered Position [as an Account Executive] in the State of California at any time between November 13, 2002 and December 31, 2006, who have not previously signed a settlement releasing M.L. Stern from any claims asserted in the Complaint." *Id.* at ¶ 39.  M.L. Stern estimates that the settlement class consists of approximately 180 individuals who were employed by M.L. Stern as Account Executives in the State of California.  Joint Motion at 5.  In addition, there are approximately 40 individuals who were employed by M.L. Stern as Account Executives in the State of Nevada.  *Id.*  Pursuant to the settlement, the Nevada employees have the option of "opting-in" to the settlement class to participate in the settlement; if they do not do so, they will not be bound by the settlement. Settlement at ¶ 55.

      In response to the Court's Order requiring clarification regarding why the Nevada Account Executives are being permitted to opt-in to the settlement, whereas the California Account Executives will be bound by the settlement unless they opt-out [Doc. 69], Plaintiffs filed a supplemental memorandum in further support of their Joint Motion ("Supplemental Memo.") [Doc. 70].  Plaintiffs explain that the Complaint in this action is brought only on behalf of California Account Executives and is predicated on violations of California state wage and hour laws.  Supplemental Memo. at 2.  However, during the mediation process, Defendant provided data relating to Account Executives located in Nevada, and the parties began discussing how to account for the Nevada employees who were not previously part of the case.  *Id.* at 3.  Plaintiffs' counsel were reluctant to group the Nevada individuals into the Rule 23 settlement class for two reasons: (1) as there were only approximately 40 Nevada Account Executives, there was a concern that there might not be a sufficient number of individuals harmed to satisfy the numerosity requirement of Rule 23(a)(1), and (2) there are factual and legal differences between wage and hour claims under California state law and Nevada state law; for example, California has a

07cv0118

1   number of state wage and hour claims for which there is no analogue under Nevada state

2   law.  *Id.* at 3-4.  Accordingly, the parties determined that the Nevada Account Executives

3   would be permitted to participate in the settlement pursuant to the terms of the Fair Labor

4   Standards Act ("FLSA"), which permits individuals to bring suits on behalf of themselves

5   and others who are "similarly situated" and allows aggrieved individuals to opt-in to such

6   suits.  *Id.* at 4; 29 U.S.C. § 216(b).

7        The Court conditionally finds that the proposed class meets the requirements for

8   certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure: (a) the

9   proposed class is so numerous that joinder of all members of the class is impracticable;

10  (b) there are questions of law and fact common to the proposed class, and there is a well-

11  defined community of interest among members of the proposed class with respect to the

12  subject matter of this action; (c) the claims of some or all of the class representatives are

13  typical of the claims of the members of the proposed class; (d) the class representatives

14  will fairly and adequately protect the interests of the proposed class members; (e) the

15  questions of law or fact common to class members predominate over any questions

16  affecting only individual members; (f) a class action is superior to other available

17  methods for an efficient adjudication of this controversy; and (g) counsel for the class

18  representatives are qualified to serve as counsel for the class representatives in their own

19  capacities as well as their representative capacities and for the settlement class.  The

20  Court also conditionally finds that it is appropriate to allow the Nevada Account

21  Executives the option to opt-in to the settlement class, as this will allow the parties to

22  resolve the claims of the *de minimis* number of Nevada Account Executives who wish to

23  partake in the Settlement.

24  **IV. Preliminary Approval of the Settlement**

25       **A. Legal Standard**

26       Federal Rule of Civil Procedure 23(e)(1) requires the Court to determine whether a

27  settlement is "fair, reasonable, and adequate." To make this determination, the court

28  considers certain factors: (1) the strength of the plaintiff's case and the risk, expense,

4

complexity, and likely duration of further litigation; (2) the risk of maintaining class

action status throughout trial; (3) the amount offered in settlement; (4) the extent of

discovery completed, and the stage of the proceedings, and (5) the experience and views

of counsel. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003), quoting *Molski v.*

*Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). In addition, the settlement may not be the

product of collusion among the negotiating parties. *In re Mego Financial Corp. Sec.*

*Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

As explained in the Manual for Complex Litigation, cited by the parties in their

Joint Motion at 14, court approval of a class action settlement involves a two-step process

– preliminary approval, followed by final approval of the settlement after notice to the

class:

> Review of a proposed class action settlement generally involves two
> hearings. First, counsel submit the proposed terms of settlement and the
> judge makes a preliminary fairness evaluation. . . If the case is presented for
> both class certification and settlement approval, the certification hearing
> and preliminary fairness evaluation can usually be combined. The judge
> should make a preliminary determination that the proposed class satisfies
> the criteria set out in Rule 23(a) and at least one of the subsections of Rule
> 23(b). . . The judge must make a preliminary determination on the fairness,
> reasonableness, and adequacy of the settlement terms and must direct the
> preparation of notice of the certification, proposed settlement, and date of
> the final fairness hearing.

*Manual for Complex Litigation Fourth* § 21.632 (2004); *Torrisi v. Tucson Elec. Power*

*Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's

use of the preliminary approval process).

Because class members will subsequently receive notice and have an opportunity

to be heard on the settlement, this Court need not review the settlement in detail at this

juncture; instead, preliminary approval is appropriate so long as the proposed settlement

falls "within the range of possible judicial approval." A. Conte & H.B. Newberg,

*Newberg on Class Actions*, § 11.25 (4th ed. 2002), quoting *Manual for Complex Litigation*

*Third* § 30.41 (1997). Accordingly, the Court, in this Order, will simply consider whether

the settlement is within the range of possible approval, such that there "is any reason to

notify the class members of the proposed settlement and to proceed with a fairness

07cv0118

hearing." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980).

After review of the proposed settlement, the Court has determined that there is reason to notify the class members of the proposed settlement and schedule a fairness hearing. However, the Court has also determined that certain deadlines in the notice process should be extended, as set forth in § V.C. below.

### B. Analysis

#### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation

Plaintiffs, although confident in their position, note several risks and weaknesses in their case. Significantly, Plaintiffs acknowledge that a November 27, 2006 opinion letter from the U.S. Department of Labor held that stock brokers (similar to the Account Executives at issue in this case) are exempt under the Fair Labor Standards Act ("FLSA"). Plaintiffs note that the Ninth Circuit has recently indicated a willingness to defer to the Department of Labor's interpretation of the FLSA. *See Miller v. Farmers Insurance Exchange*, 481 F.3d 1119, 1124 (9th Cir. 2007). Thus, had the case continued, Plaintiffs admit they ran the very real risk of having the Court conclude that Account Executives were exempt under both federal and state law. Joint Motion at 17.

Second, Plaintiffs point to the risk inherent in continued litigation, and the significant legal and factual hurdles that may have prevented them from obtaining any recovery at all. *Id.* at 17-18. For the foregoing reasons, the Court finds this factor weighs in favor of preliminary approval.

#### 2. The Amount Offered in Settlement

The amount offered in settlement supports preliminary approval of the settlement. Considering the present value of the settlement amount, the probability of lengthy litigation in the absence of a settlement, and the risks that Plaintiffs and the class would not have been able to succeed at trial and that a jury could award damages less than $945,960, the settlement amount is well within the range of reasonableness. Accordingly, the Court finds this factor weighs in favor of preliminary approval.

07cv0118

### 3.    The Extent of Discovery Completed and the Stage of the Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, the parties conducted discovery and Plaintiffs reviewed over 1,200 pages of documents produced by M.L. Stern. In addition, the parties engaged in an exchange of relevant information prior to the mediation. Wells Decl., ¶ 17.   Class counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently investigated class members' claims against M.L. Stern, including: (1) interviewing class members and analyzing the results of those interviews; (2) reviewing relevant documents; and (3) researching the applicable law and the potential defenses.   Settlement at ¶ 34. Accordingly, the Court finds that the parties possessed sufficient information to make an informed decision about settlement, and that this factor supports preliminarily approving the settlement.

### 4.    Experience and Views of Counsel

Class counsel has extensive experience in class action matters, including experience as lead counsel in numerous wage and hour class actions.   Joint Motion at 19, Wells Decl., ¶¶ 7-9.   Counsel believes the settlement is fair and adequate, which weighs in favor of preliminary approval.

### 5.    The Absence of Collusion

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives for certain class members at the expense of other members of the class.   *Staton*, 327 F.3d at 960.   Here, the settlement was reached with the supervision and assistance of an experienced and well-respected independent mediator, Linda Singer.   Because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that are susceptible to self-interested misconduct – the potential awards to class representatives and attorneys' fees.

07cv0118

The procedure for class representative reimbursement does not appear to be the result of collusion. Under the settlement agreement, these proposed payments are "subject to court approval."  Settlement at ¶ 40.  Congress authorized these reimbursements under 15 U.S.C. § 78u-4(a)(4), which allows the Court to award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  Because the class representatives intend to submit declarations regarding the propriety of the amount requested (Supplemental Memo. at 2 n.2), the Court finds no improper incentive for certain class members at the expense of others.

While the Court makes no findings as to Plaintiff's request for attorneys' fees at this stage, the requested fees do not appear to be the result of collusion.  M.L. Stern has agreed not to oppose an attorneys' fee request of up to 25% of the settlement amount, which is the "benchmark" for common fund cases in the Ninth Circuit.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).  Agreements not to oppose an attorneys' fee request up to a certain amount are proper.  *See, e.g., Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985), abrogated on other grounds, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).

**V. The Form and Manner of Class Notice**

The class notice must be (1) reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections and (2) must satisfy the content requirements of Rule 23(c)(2)(B).  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must state:

> (I) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

07cv0118

## A. Content of the Notice

The content of the proposed notice is adequate.  The notice includes all necessary information about the litigation, the terms of the settlement and the class members' options, including their options to (1) remain in the class and elect to be represented by counsel of their own choosing, (2) opt-out of the settlement; (3) remain in the class and object to the terms of the settlement, and/or (4) remain in the class and do nothing. Notice at III.  The notice adequately informs Nevada employees and former employees of their options, including their option to opt-in to the settlement class.  Notice at 2-3.  The notice explains that if Nevada employees do not submit a claim form they will not release any wage and hour claim that was or could have been asserted.  *Id.* at 3.

The notice also indicates that each class member's settlement payment will be calculated on a pro rata basis according to his or her number of Compensable Work Months, i.e. the number of months he or she worked as an Account Executive during the time-frame of November 13, 2002 through December 13, 2006 (the "Covered Period"). *See* Settlement, ¶¶  8, 73.  The Notice advises class members of the pertinent formula and the claim form advises class members of the number of months during the Covered Period that the class member worked as an Account Executive.  Class members can then utilize this information to evaluate the settlement and its financial implications to them. *See* Notice at 6-7; Claim Form at 2.  Class members will also have the opportunity to dispute M.L. Stern's records regarding the number of months that they worked as an Account Executive.  *See* Settlement, ¶ 61.

## B. Method of Notice

The notice and claims procedures are set out in detail in ¶¶ 46-67 of the Settlement. Within 30 days of the entry of this Order, the Claims Administrator will send, via first class mail, notice to all Account Executives (other than those who previously signed a settlement releasing M.L. Stern from any claims asserted in the Complaint) employed by M.L. Stern from November 13, 2002 through December 31, 2006 in California and Nevada.  Settlement at ¶¶ 46, 55.  The Claims Administrator will include a

07cv0118

1    claim form (Settlement, Ex. 1) , an exclusion form (Settlement, Ex. 2), and a postage pre-

2    paid return envelope.

3            The parties propose the following notice procedures: class members will have 60

4    days from the mailing of the notice to return their claim forms to the Claims

5    Administrator.  Settlement at ¶ 54. Any class member who wishes to object to the

6    settlement must file a written objection with the Court, with copies to the Claims

7    Administrator, Plaintiffs' counsel and Defendants' counsel, within 45 days following the

8    initial date the notice was mailed.  *Id.* at ¶ 64.  Any class member who wishes to be

9    excluded from the settlement must submit an exclusion form to the Claims Administrator

10   within 45 days following the initial date the notice was mailed.  *Id.*

11           No later than 20 days prior to the claim-filing deadline, the Claims Administrator

12   will mail out a reminder postcard to all class members who have not returned a claim

13   form or exclusion form.  *Id.* at ¶ 58. Ten days prior to the claim-filing deadline, the

14   Claims Administrator shall attempt to call any class member who has not returned a claim

15   form or exclusion form. *Id.* Any class member who does not timely submit an exclusion

16   form will be subject to the final judgment and release of claims in this action, except that

17   Account Executives who worked in the Nevada office will be subject to the judgment and

18   release of claims only if they submit a claim form.  *Id.* at ¶ 55.  Plaintiff's counsel will

19   provide the Court, at least 5 days prior to the final approval hearing, a declaration by the

20   Claims Administrator specifying the due diligence it has undertaken in regard to the

21   mailing of the notice.   *Id.* at ¶ 52.

22           The Court finds that the form and method of notice set forth in the Settlement

23   (subject to the revisions set forth below in § V.C.) is the best notice practicable under the

24   circumstances, shall constitute due and sufficient notice to all persons entitled to receive

25   such notice, and fully satisfies the requirements of due process, Rule 23 of the Federal

26   Rules of Civil Procedure and 15 U.S.C. § 78u-4(a)(7).

27   **C. Required Revisions to Form and Method of Giving Notice**

28           In order to assure that class members have sufficient time in which to submit

10

objections to the settlement or to file requests for exclusion, and to submit claim forms if they wish to participate in the settlement, the Court orders that the following revisions be made in the proposed notice:

1. The deadline for submitting objections shall be extended from 45 days from the date notice is first mailed (the "notice date") to 60 days from the notice date.

2. The deadline to submit claim forms shall be extended from 60 days from the notice date to 75 days from the notice date.

3. The deadline for class members to opt-out of the settlement by filing a request for exclusion shall be extended from 45 days from the notice date to 60 days from the notice date.

The Court, therefore, **APPROVES** the proposed notice, subject to these requirements.

**VI. CONCLUSION**

For the foregoing reasons, and good cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. Preliminary approval of the proposed settlement is GRANTED;

2. The Settlement Class is conditionally certified for settlement purposes only;

3. The form and manner of giving notice of the proposed settlement to the class is approved, subject to the requirements set forth in § V.C. above;

3. Notice shall be mailed within 30 days from the date of entry of this Order, or no later than **May 14, 2009**;

4.  Any objections to the proposed settlement shall be filed no later than 60 days from the notice date (extended from the 45 days proposed in the Notice/Settlement), or no later than **July 13, 2009**;

5. Exclusion forms must be submitted no later than 60 days from the notice date (extended from the 45 days proposed in the Notice/Settlement), or no later than **July 13, 2009**;

6. Claim forms must be submitted no later than 75 days from the notice date

11

07cv0118

1  (extended from the 60 days proposed in the Notice/Settlement), or no later than **July 28,**
2  **2009**;

3       7. The parties' mutually agreed upon Claims Administrator is approved;

4       8. Barroway Topaz Kessler Meltzer & Check, LLP and Initiative Legal Group LLP
5  are approved as class counsel, with Barroway Topaz Kessler Meltzer & Check, LLP
6  approved to serve as lead class counsel;

7       9. Gerald Till, Denny Bilikas and Craig Taggert are approved as class
8  representatives;

9       10. The settlement is deemed filed as of the date of this Order for purposes of
10  providing notice to the appropriate state and federal officials pursuant to the Class Action
11  Fairness Act ("CAFA"),  28 U.S.C. § 1715, and

12       The parties shall contact the chambers of the Honorable Barry Ted Moskowitz to
13  schedule a hearing on the question of whether the proposed settlement should be finally
14  approved as fair, reasonable and adequate to the class and on Plaintiff's application for an
15  award of attorneys' fees and reimbursement of expenses.

16       **IT IS SO ORDERED.**

17  DATED:  April 13, 2009

19  Jan M. Adler
   U.S. Magistrate Judge

07cv0118